UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JERRY D. ISLER,

      Plaintiff,

vs.                                                                         Civ. No. 10-00009 MV/WPL

THE NEW MEXICO ACTIVITIES ASSOCIATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 66). For the reasons set forth below, the Court will deny the motion and grant Plaintiff leave to amend.

## BACKGROUND

Plaintiff Jerry D. Isler, the head boys' basketball coach at Clovis High School ("CHS"), brings this action against the New Mexico Activities Association ("NMAA"), alleging a violation of his constitutional rights, defamation, and tortious interference with contract.

Plaintiff's Second Amended Complaint (Doc. 55), which was filed June 7, 2010, contains the following relevant general allegations:

> 4. On or about July 1, 2009 Isler entered into a contract with the Clovis Municipal School District (the "School District") for the purpose of serving as its head boy's basketball coach for the 2009-2010 school year. For several years Isler had served in that capacity with the School District and the execution of the July 1, 2009 contract was a continuation of his previous position.
>
> 5. The NMAA is an organization formed for the purpose of administering and supervising all interscholastic activities in the State of New Mexico. Each and every public or private school in the state that wishes to be involved in interscholastic activities must be a member of the NMAA.

6. The NMAA derives its authority to regulate public and private schools in New Mexico by virtue of the authority delegated to it by the New Mexico Public Education Department ("NMPED"). Each member school of the NMAA is required to agree to adhere to the terms of the rules and regulations of the NMAA as approved by the NMPED.

7. The Clovis Municipal School District is a member of the NMAA and has agreed to adhere to the rules and regulations of that body.

8. As part of the rule-making authority granted to the NMAA by the NMPED, the NMAA adopted certain rules governing the conduct of student athletes. Among those is rule 6.1.3, which states:

**Undue Influence**

The use of any of the following inducements constitutes undue influence resulting in ineligibility for all high school athletic participation for 180 school days/365 calendar days:

**A.** Participant living with coach, principal, teacher, or school official without legal guardianship
**B.** Any inducement to get parents or student to change residence for athletic/non-athletic purposes
**C.** Offer of acceptance of money
**D.** Reduction or remission of regular tuition (other than need-based financial aid available to all applicants)
**E.** Offer or acceptance of board, room, or clothing
**F.** Offer or acceptance of money for work in excess of amount regularly paid
**G.** Transportation to school by any school official
**H.** Offer or acceptance of school privileges not normally granted to other students
**I.** Free or reduced rent for parents
**J.** Offer for payment of moving expenses for parents
**K.** Communication with student/parents by school personnel that might be construed as inducement for them to attend a particular school

9. During the 2008-2009 school year, student athlete Lathan Lieb was a resident of Portales, Roosevelt County, New Mexico attending Dora high school.

10. In mid July 2009 Isler received a call from Todd Lieb, the father of Lathan Lieb. Mr. Lieb informed Isler that he was considering moving to Clovis, which would result in his son Lathan enrolling in Clovis High School ("CHS").

He requested a meeting with Isler to discuss the eligibility rules, the basketball program, and CHS in general. Isler informed Lieb that he would be happy to meet with him and that Isler would contact the CHS Athletic Director Brian Stacy ("AD Stacy"), so that he could participate in the meeting.

11. A few days after the initial contact between Lieb and Isler, a meeting was held at the office of the CHS Athletic Director. Present at the meeting were AD Stacy, Isler, Assistant Basketball Coach Scott Robinson, Todd Lieb and his son Lathan Lieb. During the meeting the participants discussed the NMAA eligibility rules, CHS and the CHS basketball program. The CHS participants made it clear to the Liebs that they were not guaranteeing Lathan Lieb a position on CHS basketball team, and the extent to which he made the basketball team and played would be determined by his ability and performance.

12. Approximately one week later, Todd Lieb called Isler and informed him that his son had decided to remain in Dora.

13. On or about the third week of August 2009 Isler received a call from Todd Lieb. Lieb informed Isler that he and his son were in Clovis and would like to come by Isler's home and visit with him. Isler told the Liebs to come by and immediately contacted AD Stacy to request that he participate in the meeting. AD Stacy informed Isler that he was unable to attend.

14. During the meeting, the Liebs and Isler again discussed the eligibility requirements, the basketball program, and specifically how Lathan Lieb might transition from a small to a large high school. Again Isler made it clear to the Liebs that he was making no guarantees concerning Lathan's ability to play on the team and that his team membership and playing time would be based upon his abilities and performance.

15. On or about September 1, 2009 Lathan Lieb enrolled in CHS.

16. The NMAA received a complaint concerning Lathan Lieb's move to CHS and began an investigation to determine whether or not the School District had been guilty of undue influence concerning its conduct towards Lathan Lieb.

17. On December 16, 2009 the School District received a letter from Gary Tripp, Executive Director of the NMAA, informing the School District that NMAA had determined that the CHS boy's basketball program had violated rule 6.1.3 concerning undue influence and as a result, Isler was going to be suspended from all coaching activities for the remainder of the 2009-2010 school year.

18. As part of the process of drafting and submitting its December 16, 2009 letter to the School District, the NMAA coerced the School District into accepting its findings concerning Isler by threatening to impose greater sanctions

upon the School District in the event that it should appeal the NMAA's initial findings. In addition, the NMAA refused to provide the School District with any documentation concerning its investigation so that the School District could make an independent determination concerning the validity of the NMAA allegations.

19. Based upon the threats made by the NMAA to the School District, the School District made a determination that it would not appeal the findings of the NMAA. Subsequently, pursuant to its obligation as a member of the NMAA, the School District issued a letter informing Isler that effective immediately his coaching contract was terminated based upon the findings of the NMAA.

20. The NMAA submitted the December 16, 2009 letter to the School District even though it knew there was no factual basis for its allegations against the Clovis Schools or JD Isler, and that it had no basis for alleging that Isler had violated provisions of the NMAA rules, nor was guilty of undue influence.

Plaintiff's Second Amended Complaint contains five counts. Counts I-III all allege violations of Plaintiff's constitutional rights. Specifically Plaintiff alleges *inter alia* that "Rule 6.1.3(K) violates the due process clause of the New Mexico and United States Constitutions in that it is so vague that people of common intelligence must guess at its meaning and differ as to its application." (Doc. 55 at p. 5). Plaintiff also alleges that "[t]he Defendant's conduct in suspending and terminating the Plaintiff for his meeting with the Liebs violates his right to freedom of association." (*Id.*). The difference between these three counts rests in the relief sought: Count I seeks declaratory relief, Count II seeks injunctive relief, and Count III seeks damages. The remaining two counts are based on State law: Counts IV alleges defamation and Count V alleges tortious interference with contract.

This lawsuit was original filed in State Court in December 2009 and was subsequently removed to this Court. On February 19, 2010, this Court issued a preliminary injunction, which required the NMAA to allow Plaintiff to coach for the remainder of the 2009-2010 season and required former Defendants the Board of Education of the Clovis Municipal Schools and Superintendent Dr. Rhonda Seidenwurm to reinstate Plaintiff as the Head Coach of the Clovis

High School Boys' Basketball Program for the remainder of the 2009-2010 basketball season. (Doc. 44). Plaintiff subsequently reached a settlement with the Board of Education of the Clovis Municipal Schools and Superintendent Dr. Rhonda Seidenwurm and they are no longer parties to this lawsuit. (Docs. 48 & 49).

In the instant motion to dismiss, the NMAA argues that (1) Counts I and II are moot, as the 2009-2010 basketball season is over; (2) Counts I through III fail to state a claim; (3) Count III fails because under § 1983, Plaintiff cannot rely upon a theory of *respondeat superior*; (4) Plaintiff failed to exhaust his administrative remedies; and (5) there is no waiver of immunity under the New Mexico Torts Claims Act for Counts IV and V.

## **STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted).

To the extent that the motion to dismiss is premised on this Court lacking subject matter jurisdiction, Plaintiff bears the burden of demonstrating that this Court has jurisdiction to hear his claims. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182, 189 (1936). A motion to dismiss a complaint for lack of jurisdiction over the subject matter may be brought pursuant to Federal Rule of Civil Procedure 12(b)(1). When making a Rule 12(b)(1) motion, a

party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).

## ANALYSIS

### I. WHETHER COUNTS I AND II ARE MOOT

"In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quotations omitted). An exception to this general rule occurs in cases that are deemed to be "capable of repetition, yet evading review." *Id.* at 482 (quotation omitted). Application of this exception is "limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

The NMAA argues that plaintiff's claims for declaratory relief and injunctive relief are moot as on February 19, 2009, this Court issued a preliminary injunction that reinstated Plaintiff as the Head Coach of the Clovis High School Boys' Basketball Program for the remainder of the 2009-2010 basketball season—the same period to which the NMAA suspension would have applied. Accordingly, the NMAA maintains that there is no actual controversy capable of being addressed by the declaration sought and that no injunction is needed to preserve the status quo. While there is no dispute that declaratory or injunctive relief with respect to the 2009-2010 basketball season is moot, the parties dispute whether this case falls into the capable of repetition, yet evading review exception.

Neither party makes any argument with respect to the first prong of the exception and the Court finds that this prong is met. Here, the challenged action, a suspension, covered a portion of the basketball season. It was thus too short in duration to be fully litigated prior to its expiration and there is no reason to assume any future suspension would necessarily be of a longer duration. The dispute thus centers around the second prong of the exception: Whether there is a reasonable expectation that Coach Isler may be subjected to the same action again.

Coach Isler continues to coach at Clovis High School and continues to be subject to all the rules and regulations of the NMAA, including Bylaw 6.1.3(K), which prohibits any communication with students or parents by school personnel "that might be construed as inducement for them to attend a particular school." It is Coach Isler's contention that "[i]t is almost a certainty that in the future, as a coach at CHS, Isler will have a brief conversation with a player on the opposing team telling them that they played well, or he will have conversations with people that he has known for years who happen to have kids that play on other high school basketball teams," and that in light of the unfettered discretion Gary Tripp, the Executive Director of the NMAA, has in determining what might be construed as an inducement, it is highly probable that this type of incident will repeat itself. (Doc. 78 at p. 2). In so arguing, Coach Isler does not submit any new evidence, but instead refers to the testimony in this case, which this Court assumes is a reference to the two evidentiary hearings that were held on January 27, 2010 and February 16, 2010.

As noted above, on February 19, 2010, this Court issued a Memorandum Opinion and Order granting Plaintiff a preliminary injunction. (Doc. 44). In that order, the Court found that Coach Isler had demonstrated a strong likelihood of success on the merits as to his claim that Bylaw 6.1.3(K) is unconstitutionally vague, observing *inter alia* that:

> Based on the testimony and evidence presented to this Court thus far, it appears that there is no objective measure as to what "might be construed as an inducement" pursuant to Bylaw 6.1.3(K). Rather, what might be construed as an inducement appears to depend primarily on the perceptions of Mr. Tripp. Moreover, in his testimony before this Court and during his investigatory interview with Mr. Isler and Mr. Stacy, Mr. Tripp notes a number of things that appear to this Court to constitute innocent conduct, but which he views as suspicious. Moreover, even after two days of testimony, it is not clear to this Court where Mr. Tripp draws the line between permissible and impermissible communications.

(Doc. 44 at pp. 17-18).

As Coach Isler continues to be subject to Bylaw 6.1.3(K), and as this Court has found that based on the evidence presented at the preliminary injunction hearing, this Bylaw provides no objective measure of what might be construed as an inducement and instead leaves that determination largely to Mr. Tripp—who appears to view certain things that would appear to be innocent conduct as suspicious—there is a reasonable expectation that Coach Isler may again be subject to a penalty for violation of Bylaw 6.1.3(K). Accordingly, the Court finds that the claims are capable of repetition, yet evading review and therefore Plaintiff's request for declaratory and injunctive relief is not moot.

## II.   WHETHER COUNTS I THROUGH III FAIL TO STATE A CLAIM

The NMAA makes several arguments regarding the sufficiency of Plaintiff's constitutional claims. First, the NMAA asserts that the Second Amended Complaint and record fail to "discern exactly what it is Plaintiff alleges the NMAA did to violate any constitutional right." (Doc. 67 at p. 8). The Court does not find that there is ambiguity concerning the conduct that is alleged to have violated Plaintiff's rights. As noted above, Counts I through III are all based on the same conduct and differ only in the relief sought. In Count I, Plaintiff specifically alleges *inter alia* that "Rule 6.1.3(K) violates the due process clause of the New Mexico and

8

United States Constitutions in that it is so vague that people of common intelligence must guess at its meaning and differ as to its application," that "Defendant's conduct in suspending and terminating the Plaintiff for his meeting with the Liebs violates his right to freedom of association," and that Plaintiff is entitled to an order declaring that "the NMAA improperly suspended him from his coaching position." (Doc. 55 at p. 5). While the reference to termination appears to be misplaced as Plaintiff's coaching contract was with the School District, not the NMAA, this does not render Plaintiff's allegations as to the NMAA ambiguous. It is clear from the Second Amended Complaint that Plaintiff is challenging the sanctions imposed upon him as a result of his alleged violation of NMAA Bylaw 6.1.3(K) on the basis that Bylaw 6.1.3(K) is unconstitutionally vague and violates his freedom of association.

Second, the NMAA observes that Plaintiff has alleged that Defendant's conduct in suspending Plaintiff violates Plaintiff's right to freedom of association and argues that "despite the logical interpretation of such an allegation to implicate the First Amendment, Plaintiff has represented that the allegation relates not to the First Amendment but rather to 'individual liberty protected by the Due Process Clause of the Fourteenth Amendment.'" (Doc. 67 at pp. 8-9 (quoting Doc. 45 at p. 1)). This apparent confusion would appear to stem from the fact that the term "freedom of association" encompass two distinct types of rights: the right to associate for the purposes of engaging in those activities protected by the First Amendment, including speech, assembly, petition for redress of grievances and the exercise of religion and the right to enter into and maintain certain intimate human relationships, which is protected as a fundamental element of personal liberty. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). Plaintiff has conceded that this case does not implicate the right to associate for the purpose of engaging in those activities protected by the First Amendment. (Doc. 45). Instead, Plaintiff asserts a

9

freedom of association claim that has its origin as a fundamental element of personal liberty.

Third, the NMAA argues that Plaintiff cannot challenge the vagueness of the NMAA Bylaws because he has failed to identify a constitutionally protected liberty or property interest at stake. The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV; *see also Bailey v. Kirk*, 777 F.2d 567, 572 (10th Cir. 1985). As noted above, the Second Amended Complaint alleges that the NMAA's conduct in sanctioning Coach Isler for his meeting with the Liebs violates his right to freedom of association; thus, the NMAA's argument that Plaintiff has failed to identify an alleged liberty interest is unfounded. However, the question remains as to whether the relationship between Coach Isler and the Liebs is of such nature that it is constitutionally protected. The types of intimate human relationships identified by the Supreme Court in *Roberts v. United States Jaycees* as being constitutionally protected are "those that attend the creation and sustenance of a family," namely marriage, childbirth, the raising and education of children, and the cohabitation with one's relatives. 468 U.S. at 619-20. The Second Amended Complaint does not contain allegations that would suggest such a relationship existed between Coach Isler and the Liebs. However, as this issue was not adequately raised in the NMAA's moving papers, the Court believes that it would be premature to dismiss Plaintiff's freedom of association claim before Plaintiff has an opportunity to brief this issue. Further, this Court notes that the evidence presented to the Court in conjunction with the preliminary injunction raises other potential liberty interests, which are not adequately alleged in the Second Amended Complaint, namely interests in Plaintiff's reputation and career. *See Garcia v. City of Albuquerque*, 232 F.3d 760, 771 (10th Cir. 2000); *Miller v. City of Mission*, 705 F.2d 368, 373 (10th Cir. 1983). In light of the above, the Court finds that Plaintiff should be granted leave to

amend his complaint to specify any additional facts upon which his liberty interest is based.

Finally, in a single sentence, the NMAA asserts that even were this Court to find that Count III includes a viable claim, Plaintiff is not entitled to punitive damages. The only case Plaintiff cites, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), stands for the proposition that punitive damages may not be awarded against a municipality. As the NMAA is not a municipality and as it offers no authority or argument as to why the principals articulated in *City of Newport v. Fact Concerts, Inc.* extend to it, to the extent the NMAA's motion seeks dismissal of the Plaintiff's request for punitive damages, the Court will deny the request without prejudice.

### III.    WHETHER COUNT III IS BARRED BY *MONELL*

The NMAA argues that Plaintiff's claim for damages under § 1983, Count III, is barred by *Monell v. Department of Social Services,* 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely because it employs a tortfeasor (in other words, it cannot be held liable under a *respondeat superior* theory); rather, to be liable, the municipality must have a policy or custom that caused the constitutional tort. *Monell*, 436 U.S. at 691, 694. While *Monell* itself applied to municipal governments and not private entities acting under color of state law, it is now settled that *Monell* also extends to private defendants sued under § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).

The NMAA attempts to frame this case as one involving a single discretionary decision by the NMAA's Executive Director, Mr. Tripp, who it contends is not a final decisionmaker with regard to the policies and practices of the NMAA. However, the Second Amended Complaint directly challenges the constitutionality of Section 6.1.3(K) of the NMAA Bylaws. As the

Supreme Court explicitly recognized in *Monell* that local governing bodies "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision official adopted and promulgated by that body's officers," 436 U.S. at 690, the Court finds that Plaintiff has sufficiently alleged a basis for holding the NMAA liable.

## IV.     PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The NMAA argues that this case should be dismissed as Coach Isler failed to exhaust his administrative remedies. The Court, however, finds that the NMAA's argument is not well-founded as the Supreme Court has recognized that a plaintiff seeking adjudication of his or her constitutional rights pursuant to § 1983 need not exhaust his or her administrative remedies before filing a claim in court. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982); *see also Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1286 (10th Cir. 2007).

## V.     WHETHER IMMUNITY HAS BEEN WAIVED AS TO COUNTS IV AND V

Pursuant to § 41-4-4 of the New Mexico Tort Claims Act ("TCA"), "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort" except as expressly waived by the New Mexico Religious Freedom Restoration Act and certain sections of the TCA. NMSA 1978, § 41-4-4. Plaintiff's defamation claim and tortious interference with contract claim do not fall within the scope of claims expressly waived. *See* NMSA 1978, §§ 41-4-5 through 41-4-12 (TCA provisions containing waivers of immunity); *see also Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 43, 16 P.3d 1084, 1102 (N.M. 2001) (no waiver of immunity under TCA for defamation); *Silva v. Town of Springer*, 121 N.M. 428, 435, 912 P.2d 304, 311 (N.M. Ct. App. 1996) (no waiver of immunity under TCA for interference with contractual relations). Therefore, the question is

whether the NMAA constitutes a "governmental entity" within the scope of § 41-4-4. If it is, then Counts IV and V must be dismissed as the NMAA would be immune from liability for these torts.

Section 41-4-3 of the New Mexico Tort Claims Act defines a "governmental entity" as "the state or any local public body." NMSA 1978, § 41-4-3. In turn, "state" or "state agency" is defined as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions" and "local public body" is defined as "all political subdivisions of the state and their agencies, instrumentalities and institutions and all water and natural gas associations organized pursuant to Chapter 3, Article 28 NMSA 1978." *Id.*

The NMAA asserts that it is an instrumentality of the state as that term is defined by the TCA. In addition to relying on allegations in Plaintiff's Second Amended Complaint, the NMAA relies on the following facts: that pursuant to NMSA 1978, § 22-2-2(L) and NMAC 6.13.2, the NMAA's rules for the organization, regulation and enforcement of interscholastic activities for its members schools are subject to the approval of the New Mexico Public Education Department; that decisions of the NMAA, in which a party is aggrieved, may be appealed to the Secretary of Public Education or his/her designee after all NMAA grievance and appeal procedures have been followed pursuant to NMAC 6.13.2.8; that NMPED regulations acknowledge that "[i]nterscholastic activities are an integral and essential component of New Mexico youth, and the curricula within New Mexico school," NMAC 6.13.2.9(A); that employees of the NMAA participate in the New Mexico Education Retirement Board state funded retirement program and received benefits through the New Mexico Public Insurance Authority pursuant to NMAC 2.82.2.8(A)(11) and NMSA 1978, § 22-29-9(E); and that pursuant to NMAC 6.63.8.8, all individuals who serve as athletic coaches in the New Mexico Public

13

Schools must hold coaching licenses that require *inter alia* satisfactory completion of the NMAA's coaches' training program. (Doc. 67 at pp. 14-15). The NMAA also refers the Court to the NMAA's website as authority for the proposition that the NMAA is governed by a Board that includes public school superintendents throughout New Mexico. (Doc. 67 at p. 14).

Plaintiff, by contrast, argues that the NMAA is not an instrumentality of the state, relying on various information from the NMAA Handbook, including: that the NMAA was formed in 1921 as a private/nonprofit organization; that it was not until 39 years after the NMAA's inception that the State Education Department actually recognized the NMAA as the organization to supervise and regulate interscholastic activities; that the NMAA is a voluntary, incorporated, not-for-profit educational organization as provided in its Articles of Incorporations and Bylaws filed with the New Mexico State Corporation; that funds for operation of the NMAA are derived from *inter alia* service fees/dues, percentages of gate receipts and playoffs, various tournaments, corporate/individual donors, interest on investments, fines, and assessments; and that the NMAA has the ability to dissolve itself. (Doc. 78 at pp. 7-8). Plaintiff also observes that while NMSA 1978, 22-2-2(L) and NMAC 6.13.2 allow the NMPED to approve rules for the organization, regulation and enforcement of interscholastic activities, they expressly provide that the NMPED "shall have no power or control over the rules or regulations of bylaws governing the administration of internal organization" of the NMAA. (Doc. 78 at pp. 7-8).

Neither party, however, provides this Court any guidance on how the term "instrumentality" is interpreted under New Mexico case law or as to what factors should be taken into account. Moreover, both parties rely on outside evidence that is improper in the context of a motion to dismiss. Accordingly, the Court will deny the NMAA's request for dismissal of Counts IV and V without prejudice. The NMAA may, if appropriate, raise this

argument again in the context of a summary judgment motion and if it does, it should cite relevant New Mexico case law interpreting § 41-4-3 of the New Mexico Tort Claims Act.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 66) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff is hereby granted leave to file an amended complaint in accordance with Section II of this Memorandum Opinion and Order. Such complaint must be filed no later than 10 days after entry of this Order.

DATED this 31st day of March, 2011.

_____
**MARTHA VAZQUEZ**
**United States District Judge**