## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JERRY D. ISLER,

       Plaintiff,

v.                                                                                  CV 10-0009 MV/WPL

THE NEW MEXICO
ACTIVITIES ASSOCIATION,

       Defendant.

## ORDER

This matter is before me on the New Mexico Athletic Association's ("NMAA") motion to recover all fees and expenses related to Plaintiff Jerry Isler's identification of two expert witnesses. (Doc. 147.) The Honorable Martha Vazquez referred this motion to me in order to make findings of fact, perform legal analysis, and recommend a final disposition. (Doc. 160.) Since this motion will not result in dispositive action, I have the authority to fully resolve this matter. *See Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997) ("a request for a sanction . . . is among the nondispositive matters which a magistrate judge may decide"); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995). Accordingly, I am not filing a Proposed Findings and Recommended Disposition; instead, I now grant in part and deny in part NMAA's motion for fees.

### FACTUAL & PROCEDURAL BACKGROUND

Isler was a basketball coach at Clovis High School, and, in December 2009, the NMAA accused him of enticement and undue influence concerning a student athlete potentially transferring to Clovis. (Doc. 115 at 5.) Isler brought this action against the NMAA for violations of due process,

defamation, and tortious interference of contract.[1] (Doc. 1 Ex. A; Doc. 115.)

Isler identified two expert witnesses, Terry Summers, Athletic Director of Denver City High School, and Brian McDonald, Ph.D., an economist. (Doc. 107 at 3, 5.) Both were deposed by defense counsel on March 8, 2011. (*Id.* at 2.) Shortly thereafter, on March 21, 2011, NMAA moved to strike both witnesses. (Doc. 107.) Before I could rule on the motion, Isler withdrew both experts. (Doc. 117; Doc 122.) I therefore denied NMAA's motion to strike as moot. (Doc. 137.)

NMAA subsequently moved to recover all fees and expenses related to preparing for and taking the depositions of Summers and McDonald on the ground that neither were named in good faith. (Doc. 147 at 2.) In support of its argument for fees, NMAA incorporated its earlier motion to strike and requested that the Court award fees for the preparation the motion as well. (*Id.* at 1 (incorporating Doc. 107).) Isler responded in opposition to the motion (Doc. 149), and NMAA filed a reply (Doc. 151).

DISCUSSION

NMAA has essentially asked the Court for two sets of fees – those associated with discovery from both of Isler's expert witnesses and those associated with its motion to strike both experts. I will deal with each separately.

## I.    Discovery Costs

Ordinarily, a party seeking discovery from an expert witness must bear its own costs. FED. R. CIV. P. 26(b)(4)(E). Courts have the power to reapportion these costs when "manifest injustice would result." *Id.* Trial courts have a great deal of discretion in defining what constitutes "manifest injustice." *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1360-61 (Fed. Cir. 2008). Courts have

---

[1] Isler had named additional Defendants, but all have since been dismissed. (Doc. 35; Doc. 49.)

interpreted this language to support awarding fees to indigent parties who would not otherwise be able to conduct discovery, as well as awarding fees when a party has "engaged in litigation misconduct and inequitable conduct." *Id.* at 1361. The latter example includes the practice of naming witnesses who are not intended to testify at trial in order to distract and burden the opposing party. *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 920-921 (7th Cir. 2002). Since NMAA is not indigent, a decision to award it discovery costs related to experts must be based out on litigation misconduct or inequitable conduct related to naming either Summers or McDonald as witnesses.

     A.    *Terry Summers*

 Isler planned on retiring from his position in New Mexico in 2014 and then moving to Texas to teach and coach while he collected his New Mexico pension. (Doc. 117 at 1-2.) At the outset of the litigation, he believed that he would have extreme difficulty securing a coaching position in Texas as a result of the allegations by NMAA, so he hired Summers as an expert witness to testify to that effect. (Doc. 149 at 1.) Isler withdrew Summers in his response to NMAA's motion to strike, stating that his testimony was no longer necessary because "several employees of the Defendant . . . conceded that the actions by the New Mexico Activities Association . . . would negatively affect the Plaintiff's ability to get a coaching job." (Doc. 117 at 1.) However, in response to the current motion, he states that he withdrew Summers "because he was a terrible witness." (Doc. 149 at 2.)

    NMAA claims that Summers was never qualified to be an expert. (Doc. 107 at 7-9; Doc. 147 at 1-2.) In support of its position, NMAA states that Summers: 1) is the athletic director of a school in a town of only 5,000 people; 2) has never had final hiring authority; 3) has never served as an expert, testified, or consulted in "anything at all"; 4) has never authored any publications; 5) based his opinion on a "Google" search of Isler, but he has never done a computer search on any job

applicant; and 5) did not write his own expert report. (Doc. 107 at 3-4.) I agree with NMAA. Summers has no business testifying as an expert since he has no expertise regarding hiring high school basketball coaches in Texas.

It is patently obvious that Summers was never qualified to serve as an expert. Therefore, the decision to name him as such amounts to misconduct, and it would be manifestly unjust to require NMAA to pay discovery expenses relating to Summers. I therefore order Isler to reimburse NMAA for its preparation for Summers' deposition, the deposition, the transcript, and the copying fees.

###### B.      Brian McDonald, Ph.D.

Isler retained economist McDonald in this case to calculate the economic damage to Isler's reputation caused by NMAA's conduct and allegations. (Doc. 117 at 2.) To do this, McDonald assumed that, but for the allegations, Isler would have earned a salary of $60,000 as both a teacher and a coach in Texas beginning in the year 2014. (Doc. 107 Ex. B; Doc. 107 Ex. D at 2-3.) Using 2011 present value dollars, McDonald calculated Isler's economic damages as the lost salary from Fall 2014 until his planned retirement in Spring 2027. (Doc. 107 Ex. B.) He opined that Isler's total economic damages would be $606,889.00. (*Id.*)

During his deposition, McDonald explained that if he were to conduct a lost earning analysis, he would have only used the annual coaching stipend to calculate the economic loss of being a coach.[2] (Doc. 107 Ex. D at 4-5.) However, since Isler felt that his reputation had been damaged and that he would not be able to secure a job as a teacher and a coach, McDonald considered Isler's full teacher/coach salary and not just the stipend he received for coaching. (*Id.* at 5.) He testified that he

---

[2] For example, a teacher/coach making $60,000 per year would receive $55,000 from his teacher's salary and an additional $5,000 as a coaching stipend.  Thus, his lost earnings would only be $5,000.  (Doc. 117 at 2.)

had never performed this type of "reputational damage" calculation before but that plaintiff's counsel had suggested this approach. (*Id.* at 6.) He also testified that there was no research to support his methodology. (*Id.*)

NMAA argues it should not bear the cost of discovery from McDonald since his analysis inappropriately relies on the full teacher/coach salary and his reputational damages calculations have no "authoritative basis." (Doc. 147 at 2.) However, the core of both arguments is grounded in the mechanics of McDonald's calculation, not whether Isler's decision to name McDonald was misconduct. Unlike with Summers, it is understandable that Isler would need an economics expert to testify as to his damages, and he selected an individual who is qualified to calculate economic losses. While I will not speak to the validity of McDonald's approach, the decision to name McDonald does not appear to arise out of a desire to waste NMAA's time and resources.

## II.     Motion to Strike

In its motion to strike, NMAA initially requested that it be awarded all costs and fees associated with the motion (Doc. 107 at 11.) NMAA renewed this request in the current motion. (Doc. 147 at 1.) I need not consider the merits of the motion to strike now, after having denied it as moot months ago, in order to determine whether NMAA is entitled to fees for briefing its motion to strike. Isler withdrew Summers in response to NMAA's motion, which was the initial relief requested. Thus, I will grant NMAA fees associated with moving to strike Summers. *See generally* FED. R. CIV. P. 37(a)(5)(A) (awarding fees when discovery provided after filing discovery motion). However, I believe that Isler was substantially justified in defending the validity of McDonald's expert opinion on his economic calculations, and so I will not award costs and fees as to this half

of the motion to strike.[3]

## CONCLUSION

Summers had no qualifications to serve as an expert witness in this case; however, the decision to name McDonald appears warranted given the circumstances at the beginning of the case and McDonald's qualifications. Since the only litigation misconduct is connected to naming Summers as an expert witness, I will only grant NMAA's motion in part. I therefore ORDER Isler to reimburse NMAA for all reasonable costs and fees associated with preparing for and taking Summer's deposition, as well as 50% of the reasonable costs and fees in bringing this motion and reply brief. I also ORDER Isler to pay 50% of all reasonable costs and fees associated with the motion to strike. NMAA has ten days to file an affidavit detailing the costs and fees associated with the motion to strike and the motion for fees and expenses.

IT IS SO ORDERED.

_William P. Lynch_

William P. Lynch
United States Magistrate Judge

---

[3] Isler later withdrew McDonald, but it was not in response to the motion to strike. (Doc. 122.) He withdrew McDonald because he had accepted a coaching position in Texas and no longer needed McDonald's testimony. (*Id*. at 1.)

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.