## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JERRY D. ISLER,

        *Plaintiff,*

vs.

                                                    No. 10-CV-009 MV/WPL

THE NEW MEXICO ACTIVITIES ASSOCIATION,

        *Defendant.*

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. 144] and Defendant's Motion for Summary Judgment and Memorandum in Support Thereof [Doc. 145].   The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Defendant's Motion is well-taken in part and will be GRANTED in part and DENIED in part, and that Plaintiff's Motion is well-taken in part and will be GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff was the Head Coach of the Boys' Basketball Program and a science teacher at Clovis High School ("CHS").   In mid-July 2009, Plaintiff received a call from Todd Lieb, the father of Lathan Lieb, a student at Dora High School who played for the Dora High School basketball team.   Mr. Lieb informed Plaintiff that he and his son were considering moving from Portales, New Mexico, to Clovis, New Mexico, which would mean that Lathan would enroll at CHS.   Mr. Lieb asked to speak with Plaintiff to learn more about the CHS basketball program,

and the eligibility rules of the New Mexico Activities Association ("NMAA"), the organization charged with regulation of interscholastic sports in New Mexico schools.   Plaintiff contacted his supervisor, Brian Stacy, the Athletic Director of CHS, and a meeting was arranged.   Plaintiff, along with his assistant coach and Mr. Stacy, met with Mr. Lieb and his son Lathan.

After the meeting, Mr. Lieb and Lathan decided to move to Clovis.   They changed their mind, however, and Mr. Lieb called Plaintiff to inform him that Lathan would not be transferring to CHS.   Lathan then enrolled in Dora High School for the 2009-2010 academic year.   In late August 2009, however, just after the school year began, Lathan again changed his mind, and decided that he would, in fact, transfer to CHS.   Mr. Lieb contacted Plaintiff by telephone, and requested that Plaintiff meet with them to discuss the transfer.   Plaintiff contacted Mr. Stacy to see if he would participate in a meeting with the Liebs.   Mr. Stacy was unavailable.   Plaintiff invited Mr. Lieb and Lathan to meet with him at his house.   A day or two later, Lathan withdrew from Dora High School and enrolled at CHS.

The NMAA received a complaint regarding Lathan Lieb's transfer, and commenced an investigation of the CHS basketball program.   Based on the investigation, the NMAA determined that Plaintiff had violated NMAA Bylaw 6.1.3(K) (Undue Influence), which prohibits "communication with student/parents by school personnel that might be construed as inducement for them to attend a particular school."   As a result of this determination, on December 16, 2009, the NMAA suspended Plaintiff from all coaching duties at CHS for the remainder of the 2009-2010 school year.   That same day, the Superintendent of the Clovis Municipal Schools, Dr. Rhonda Seidenwurm, advised Plaintiff by letter that the Clovis School District was terminating his coaching duties as of January 13, 2010, and that, in the interim, he was suspended from all coaching duties.

2

On December 18, 2009, Plaintiff filed the instant lawsuit in the Ninth Judicial District Court of the State of New Mexico against the NMAA, the Board of Education of the Clovis Municipal Schools (the "Board of Education"), and Dr. Seidenwurm.   On January 5, 2010, the NMAA removed the case to federal court.   *See* Doc. 1.   On January 26, 2010, Plaintiff filed a Motion for a Preliminary Injunction.   *See* Doc. 17.   Following two evidentiary hearings, on February 9, 2010, the Court granted Plaintiff's motion, ordering the NMAA to allow Plaintiff to coach for the remainder of the 2009-2010 season, including any post-season tournament games, and ordering the Board of Education and Dr. Seidenwurm to reinstate Plaintiff as Head Coach of the CHS Boys' Basketball Program for the remainder of the 2009-2010 basketball season, including any post-season tournament games.   *See* Doc. 44.

Thereafter, Plaintiff reached a settlement with the Board of Education and Dr. Seidenwurm, and the Court dismissed those Defendants from the case on March 17, 2010.   Doc. 49.   On April 13, 2011, Plaintiff filed a Third Amended Complaint against the NMAA for Violation of Civil Rights, seeking: a declaratory judgment and damages, including punitive damages, based on his allegations that NMAA Bylaw 6.1.3(K) is unconstitutionally vague and his allegations that the NMAA's conduct in suspending him violates his right to freedom of association (Count I); an injunction enjoining the NMAA from suspending him as the CHS basketball coach (Count II); damages for the state law torts of defamation and tortious interference with contract (Counts III and IV); and damages for depriving him of his liberty interest in his good name and reputation without due process of law (Count V).   *See* Doc. 115.

Plaintiff's teaching and coaching contracts with CHS were renewed for the 2010-2011 school year.   At the end of the 2010-2011 school year, Plaintiff signed a Letter of Intent to continue teaching and coaching for the 2011-2012 school year.   In June of 2011, however, Plaintiff applied for and was offered a job as Head Men's Basketball Coach at McMurry University, where his son is a member of the team.   He accepted the job, and indicated that he did so because it was the job he preferred.   Plaintiff's salary and benefits at McMurry University are more lucrative than what he was receiving at CHS.   The job at McMurry University was the only job for which Plaintiff applied after his suspension by the NMAA.

Effective July 1, 2011, NMAA Bylaw 6.1.3(K) was revised, and Plaintiff agrees that the revised provision is not unconstitutionally vague.

On October 17, 2011, each party filed a motion for summary judgment in its favor. Defendant's motion seeks dismissal of all five counts in the Third Amended Complaint.   In response to Defendant's motion, Plaintiff concedes that, because he is no longer employed by CHS and because the NMAA rule at issue has been revised, his claims for declaratory and injunctive relief are moot.   Further, Plaintiff concedes that his freedom of association claim is unsupported. Accordingly, Plaintiff agrees to dismissal of Count II (request for injunctive relief), that portion of Count I that requests a declaratory judgment, and that portion of Count I that seeks damages as a result of the NMAA's alleged violation of his right to freedom of association.   In his own motion, Plaintiff seeks judgment in his favor on the remaining portion of Count I (seeking damages based on the unconstitutional vagueness of NMAA Bylaw 6.1.3(K)), Count III (seeking damages based on defamation), and Count V (seeking damages for the violation of his due process rights).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).   There is no requirement that the moving party negate the nonmovant's claim.   *See Celotex Corp. v. Catrett*,   477 U.S. 317, 325 (1986).   Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).   Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."   *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."   *Kaus*, 985 F. Supp. at 1281.

5

**DISCUSSION**

I.   The NMAA's Liability Under 42 U.S.C. Section 1983 for Suspending Plaintiff Pursuant
     to NMAA Bylaw 6.1.3(K) (Count I)

Plaintiff argues that the version of NMAA Bylaw 6.1.3(K) in effect at the time of his

suspension is unconstitutionally vague, and thus violates the Due Process Clause, both because it

fails to provide adequate notice of the conduct it prohibits, and because it is subject to arbitrary

enforcement.   Plaintiff further argues that the NMAA is subject to liability under 42 U.S.C.

Section 1983 for punishing him pursuant to the unconstitutionally vague Bylaw.   Neither in its

own motion nor in response to Plaintiff's motion does Defendant address the merits of Plaintiff's

argument.   Rather, Defendant contends that Plaintiff is foreclosed from making a vagueness

argument at all, because:   (1) the "void for vagueness" doctrine applies only to criminal statutes,

and the Bylaw at issue here is not a criminal statute; (2) because Plaintiff is no longer at CHS, and

because the Bylaw at issue has been revised, his claims are moot and thus not reviewable by the

Court; and (3) in order to make a due process challenge to a statute as unconstitutionally vague, a

plaintiff first must show that he has a property or liberty interest at stake, and Plaintiff has not done

so.   None of Defendant's arguments is availing.

First, although "the void for vagueness doctrine arose as an aspect of Fourteenth

Amendment due process in the context of criminal statutes, . . . [t]he doctrine has been extended to

civil cases."   *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992).   Because the

consequences in a criminal case are more severe than in a civil action, "[l]esser degrees of

specificity are required to overcome a vagueness challenge in the civil context."   *Id.*

Specifically, "a civil statute will be void for vagueness if it exacts obedience to a rule or standard

that is 'so vague and indefinite as really to be no rule or standard at all.'"   *Armuchee Alliance v.*

6

*King*, 922 F. Supp. 1541, 1547 (N.D. Ga. 1996).   Accordingly, under this less stringent standard, Plaintiff appropriately may challenge the constitutionality of the NMAA Bylaw.

Next, "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable."  *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1306 n.3 (8th Cir. 1997).   Here, the Third Amended Complaint clearly states that Plaintiff requests compensatory and punitive damages.   Accordingly, the fact that Plaintiff is no longer employed in a position where he is subject to the NMAA's rules and regulations is irrelevant for purposes of mootness because, rather than seeking injunctive relief, Plaintiff seeks damages.  *Id.*  Similarly, Plaintiff's vagueness claim is not moot because the NMAA revised the Bylaw.   "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Id.* at 1307 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).   The Court declines to render Plaintiff's claim moot and allow the NMAA to insulate itself from liability simply by revising its Bylaws.  *See id*. at 1308.

Finally, Defendant's argument that Plaintiff's vagueness claim must fail because he had no liberty or property interest in his coaching position seems to misunderstand the relationship between the due process clause and the void for vagueness doctrine.[1]   "The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments."  *Id.* "As a basic matter of due process, a law is 'void for vagueness' if it does not clearly define its prohibitions."  *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006).   The

---

[1] Indeed, even if the Court were required to find an interest at stake in addition to the interest in being free from punishment pursuant to an unconstitutionally vague regulation, such an interest is easily found in Plaintiff's 2009-2010 contract with CHS, which, "at the time of the sanction in question . . . had already been awarded."  *Wright v. Arkansas Activities Ass'n*, 501 F.2d 25, 27 (8th Cir. 1974).

void for vagueness doctrine "incorporates notions of fair notice or warning," and a regulation "violates the first essential of due process of law" if it fails to provide adequate notice of prohibited conduct.   *Stephenson*, 110 F.3d at 1308 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).   In other words, a regulation is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men [and women] of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally*, 269 U.S. at 391.   Further, the void for vagueness doctrine "prevents arbitrary and discriminatory enforcement," by prohibiting regulations that "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis."   *Stephenson*, 110 F.3d at 1308 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).   Accordingly, "the offense to due process lies in the nature and consequences of vagueness." *Alvarez v. Lake County Bd of Supervisors*, No. CV 10-1071, 2010 WL 3619558, *11 (N.D. Cal. Sept. 13, 2010).

Where, as here, a plaintiff's challenge is based on due process, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."   *S&S Pawn Shop Inc. v. City of Del City*, 947 F.2d 432, 440 n.6 (10th Cir. 1991) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).   Accordingly, Plaintiff can prevail with his due process challenge only by showing that the Bylaw, as previously written, was "impermissibly vague as applied to the activities in which he actually engaged." *Krukowski v. Swords*, 15 F. Supp. 2d 188, 202 (D. Conn. 1998).    In other words, Plaintiff "must demonstrate that a reasonable person would not have foreseen that the [Bylaw] would be applied to his conduct, or that he was the victim of arbitrary enforcement practices." *Id.*

Based on the evidence presented by the parties at the two hearings held by the Court in connection with Plaintiff's motion for a preliminary injunction, the Court found that NMAA

Bylaw 6.1.3(K) "lacked any standard whatsoever," and in particular, provided no notice to

Plaintiff "that his conduct could be interpreted as violating NMAA Bylaw 6.1.3."   Doc. 44 at 12,

18.   Further, the Court found that enforcement of the Bylaw was "left largely to the whim of

[Gary] Tripp," and thus Plaintiff was subject to "arbitrary and inconsistent application" of the

Bylaw.   *Id.* at 18.

On the instant motions, Defendant does not suggest that there are any material issues of

fact in dispute.   Nor does Defendant argue that, based on the undisputed facts, the Bylaw was not

unconstitutionally vague as applied to Plaintiff's conduct.   The Court thus reiterates its

determination that Plaintiff has demonstrated both that a reasonable person would not have

foreseen that NMAA Bylaw 6.1.3 would be applied to his conduct, and that he was the victim of

arbitrary enforcement practices.   Accordingly, Plaintiff prevails on his due process challenge to

NMAA Bylaw 6.1.3 as unconstitutionally vague.   *See Wright*, 501 F.2d at 28-29 (8th Cir. 1974)

(affirming decision of district court that Arkansas Activities Association's off-season football

practice regulation did not give Plaintiff fair notice of the possible sanction for its violation, *i.e.*,

the impairment of his employment contract as a teacher and coach, and that, accordingly, the

regulation on which Plaintiff's penalty was based was overly broad and unconstitutional).

The Court next must determine whether the NMAA's application of the unconstitutionally

vague Bylaw subjects it to Section 1983 liability.   Plaintiff alleges, and Defendant does not

dispute, that the NMAA is a municipal entity.   Accordingly, to recover damages under Section

1983, Plaintiff must show that: (1) his constitutional rights were violated; and (2) a municipal

policy or custom was the moving force behind the constitutional deprivation.   *Myers v. Oklahoma

County Board of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

With regard to the first prong of this test, "compensation principles require a close

assessment of the injuries alleged to have been suffered by the claimant." *Hearn v. Hudson*, 549

F. Supp. 949, 956 (W.D. Va. 1982).   Specifically, where, as here, Plaintiff's Section 1983 claim is

based on an unconstitutionally vague regulation, the Court's "[a]nalysis must focus on the

plaintiff's *own* conduct and whether any personal interests of the plaintiff said to be protected by

the void-for-vagueness doctrine were violated under the facts of the particular case."   *Id.*

(emphasis in original).   As noted above, the Court has determined that punishment for Plaintiff's

*own* conduct was beyond the foreseeable reach of Bylaw 6.1.3.   *See id.*   Accordingly, Plaintiff

has alleged a constitutional harm.   *See id.*

> With regard to the second prong of the test, it is undisputed that Plaintiff was punished
based on the NMAA's application of its own Bylaws.   The NMAA's official policy, as
memorialized in the Bylaws, thus was the "moving force" behind Plaintiff's suspension.

> Under Section 1983, to the extent that Plaintiff can establish damages based on his
suspension, the NMAA is liable for such damages.   Accordingly, Plaintiff is entitled to judgment
in his favor on Count I of the Third Amended Complaint, to the extent that this Count seeks a
finding of liability on the part of the NMAA for damages, if any, arising from the NMAA's
suspension of Plaintiff pursuant to NMAA Bylaw 6.1.3.   Plaintiff, however, may recover only
compensatory damages.   The law is settled that "a municipality is immune from punitive damages
under 42 U.S.C. § 1983."   *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).
Accordingly, Plaintiff's request for punitive damages, as set forth in Count I of the Third Amended
Complaint, must be dismissed.

II.      The NMAA's Immunity From Suit on Plaintiff's Intentional Tort Claims (Counts III & IV)

> The NMAA is a private/non-profit organization formed in 1921 for the purpose of
regulating, directing, administering and supervising interscholastic activities in the State of New

Mexico.   NMAA Handbook, § 1.3(A).   Defendant argues that the NMAA is a governmental

entity, and thus, pursuant to the New Mexico Tort Claims Act ("TCA"), is immune from suit on

Plaintiff's state law claims of defamation and tortious interference with contract.   Under the TCA,

a "governmental entity" is granted immunity from liability for any tort, except as specifically

waived therein.   NMSA 1978, § 41-4-4(A); *see also* NMSA 1978, § 41-4-2(A) ("[I]t is declared

to be the public policy of New Mexico that governmental entities and public employees shall only

be liable within the limitations of the Tort Claims Act and in accordance with the principles

established in that act.").   There is no provision waiving liability for intentional torts, such as

defamation and interference with contract, under the circumstances of this case.   For purposes of

the TCA, a "governmental entity" means "the state or any local public body."   NMSA 1978, §

41-4-3(B).   In turn, "local public body" is defined, in relevant part, as "all political subdivisions of

the state and their agencies, instrumentalities and institutions."   NMSA 1978, § 41-4-3(C).

"[U]nder current New Mexico law[,] there are circumstances in which a private corporation must

be deemed a political subdivision or a local public body."   *Mem'l Med. Ctr. v. Tatsch Constr.,*

*Inc.*, 12 P.3d 431, 440 (N.M. 2000).   Such circumstances exist where "the private entity has so

many public attributes, is so controlled and conducted, or otherwise is so affiliated with a public

entity that as a matter of fairness it must be considered the same entity."   *Id.* at 440-41.   In

determining whether a private organization is a political subdivision or a local public body, and

thus a governmental entity for purposes of the TCA, "the standard to be applied is whether under

the totality of the circumstances the government entity is so intertwined with the private entity that

the private entity has become an alter ego of the public entity."   *Id.* at 441.

   Under the totality of the circumstances here, the Court finds that the NMAA is so

intertwined with the New Mexico Public Education Department (the "Department") that it has

become an alter ego of the Department.   While the NMAA was not specifically created by statute, "it derives its status and authority from state law."   *Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 960 (Tex. Ct. App. 2010).   Specifically, in May 1960, the State Education Agency recognized the NMAA "as the organization to supervise and regulate all activities participated in/on an interschool system basis in elementary and/or secondary schools." NMAA Handbook, § 1.4(A).   The State Education Agency resolved that "all interscholastic activities be part of the [NMAA] and subject to its supervision and regulation."   *Id.*   Further, the State Education Agency was to be "officially represented at all [NMAA] meetings by the Director of Secondary Education or his/her representative."   *Id.*

The NMAA "is subject to legislative oversight in ways that are inconsistent with private entity status."   *Univ. Interscholastic League*, 319 S.W.3d at 958.   Pursuant to statutory authority to "approve or disapprove all rules promulgated by an association or organization attempting to regulate a public school activity," *see* NMSA 1978, § 22-2-2(L), the Department has issued rules governing the NMAA ("Department Rules").   *See* 6.13.2 NMAC.   The Department Rules explain that:

> Interscholastic activities are an integral and essential component of New Mexico youth, and the curricula within New Mexico schools.   In order to provide such opportunities for students, these activities must be organized, supervised and regulated in a fair, open and consistent manner.   Effective programs require that the public education department and the New Mexico activities association work in a cooperative and supportive partnership for the benefit of students.   The purpose of this rule is to establish a procedure by which the public education department and the New Mexico activities association can accomplish their respective roles in the regulation of interscholastic activities.

6.13.2.9(A) NMAC.

The Department Rules provide that the NMAA may establish its own "rules for the organization, regulation and enforcement of interscholastic activities for its member schools," but

12

that those rules are "subject to the approval or disapproval of said rules" by the Department. 6.13.2.6(A) NMAC.   Further, the Department Rules establish a process for a party aggrieved by a decision of the NMAA to appeal for state administrative review to the Secretary of Public Education.   6.13.2.8 NMAC.

The NMAA is statutorily required to comply with the provision of the Open Meetings Act, NMSA 1978, Section 10-15-1 *et seq.*, which requires that all meetings of any "public body" be open to the public.   *See* NMSA 1978, § 22-2-2.   Similarly, pursuant to statute, the NMSAA is subject to the inspection provisions of the Public Records Act, NMSA 1978, Section 14-3-1 *et seq.*, which applies to the records of "any state agency, department, bureau, board, commission, institution or other organization of the state government."   *See* NMSA 1978, § 22-2-2.   Further, the Department has elected to exercise its statutory authority to require the NMSAA to provide the Department "with an annual performance and financial audit."   *Id.*; 6.13.2.6(E) NMAC.

Finally, the NMAA is comprised of New Mexico public and private middle/junior high and senior high schools.   NMAA Handbook, § 1.3(B).   As made clear by the instant case, the NMAA has the power to sanction its member schools for noncompliance with NMAA rules.   NMAA Handbook, §§ 1.6, 1.7.

The NMAA Handbook, Department Rules and authorizing statute all indicate that the NMAA functions as co-regulator, organizer, and supervisor of interscholastic activities in the schools of New Mexico.   The Department has delegated a substantial amount of its authority to the NMAA; nevertheless, the NMAA's authority remains subject to control and review by the Department.   Under these circumstances, the NMAA "has so many public attributes, is so controlled and conducted, or otherwise is so affiliated with [the Department] that as a matter of fairness it must be considered the same entity."   *Mem'l Med. Ctr.*, 12 P.3d at 440-41.   This

13

conclusion is consistent with "every available district court opinion which has addressed this very

issue [and] has found that a state athletic association is an instrumentality of the State."   *Rhodes v.*

*Ohio High Sch. Athletic Ass'n*, 939 F. Supp. 584, 590 (N.D. Ohio 1996) (holding Ohio High

School Athletic Association ("OHSAA") to be an instrumentality of the state, where Ohio

delegated substantial amount of state authority to the OHSAA, the majority of the OHSAA's

members were public schools, it frequently used public facilities, and it exercised the ability to

sanction public schools for violations of its rules); *see also Dennin v. Conn. Interscholastic*

*Athletic Conference, Inc.*, 913 F. Supp. 663 (D. Conn.) ("Public schools delegate authority to

[Connecticut Interscholastic Athletic Conference ("CIAC")] to direct and control their athletic

programs.   Public schools play a substantial role in determining and enforcing CIAC policies.

Therefore, CIAC is an 'instrumentality of a State.'"), *vacated on other ground*s, 94 F.3d 96 (2d

Cir. 1996); *Johnson v. Fla. High Sch. Activities Ass'n, Inc.*, 899 F. Supp. 579, 583 (M.D. Fla.

1995) (holding Florida High School Activities Association, a non-profit corporation with

exclusive authority and responsibility for controlling all aspects of interscholastic activities in both

public and private high schools in Florida, to be an instrumentality of the state, and thus a public

entity), *vacated on other grounds*, 102 F.3d 1172 (11th. Cir. 1997); *Sandison v. Michigan High*

*Sch. Athletic Ass'n,* 863 F. Supp. 483, 487 (E.D. Mich. 1994) ("The state has decided to permit

[Michigan High School Athletic Association ("MHSAA")] to carry out a state function, the

organization, management, and regulation of interscholastic athletic events at public and private

schools throughout the state.   MHSAA is clearly an agency or other instrumentality of the state."),

*dismissed in part, rev'd in part, on other grounds*, 64 F.3d 1026 (6th 1995); *Pottgen v. Missouri*

*State High Sch. Activities Ass'n*, 857 F. Supp. 654, 661-62 (E.D. Mo. 1994) (holding that Missouri

State High School Activities Association is an instrumentality of state or local government, and

14

thus a public entity, because it is created and funded primarily by public schools, its members are

schools, its Board members are school superintendents or principals, and the schools delegated to

it the responsibility of supervising and regulating interscholastic activities, including determining

which students are eligible to compete in such activities), *rev'd on other grounds*, 40 F.3d 926 (8th

Cir. 1991); *Hoot v. Milan Area Schools*, 853 F. Supp. 243, 250-51 (E.D. Mich. 1994) (finding that

Michigan High School Athletic Association, a private, nonprofit association sanctioned by state

law, may be considered an instrumentality of the state because it was the official association of the

state, had a permanent ex officio member of the State Board on its governing board, was composed

of primarily public schools, and frequently used public facilities); *Univ. Interscholastic League*,

319 S.W.3d at 962 (holding University Interscholastic League ("UIL") to be governmental unit

subject to sovereign immunity, where UIL is required by statute to implement state education

policies, is granted rulemaking and enforcement power over such policies, and is subjected to

extensive oversight from legislative and executive branches); *but see Yanero v. Davis*, 65 S.W.3d

510, 530 (Ky. 2002) (holding Kentucky High School Athletic Association is not "a political

subdivision of the state," and thus not entitled to sovereign immunity).

      Accordingly, the NMAA is a governmental entity for purposes of the TCA.   As there is no

waiver of immunity pursuant to the TCA for intentional torts under the circumstances here, the

NMAA is immune from suit on Plaintiff's claims for defamation and interference with contract.

Counts III and IV of the Third Amended Complaint thus must be dismissed.

III.    <u>Deprivation of Plaintiff's Liberty Interest in His Good Name and Reputation (Count V)</u>

      In Count V of the Third Amended Complaint, Plaintiff alleges that the oral and written

statements of the NMAA deprived Plaintiff of his liberty interest in his good name and reputation

without due process of law.   The Tenth Circuit "has clearly articulated the four-part test a plaintiff

must satisfy to demonstrate the deprivation of a liberty interest in one's good name and

reputation." *McCarty v. City of Bartlesville*, 8 F. App'x 867, 873 (10th Cir. 2001).   That test is as

follows:

> First, to be actionable, the statements must impugn the good name, reputation,
> honor, or integrity of the employee.   Second, the statements must be false.   Third,
> the statements must occur in the course of terminating the employee or must
> foreclose other employment opportunities.   And fourth, the statements must be
> published.

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).   The four elements of this test "are not

disjunctive and all must be satisfied."   *Melton v. City of Oklahoma City*, 928 F.2d 920, 926-27

(10th Cir. 1991).   Here, the third element of this test cannot be satisfied, as: (1) the NMAA did not

make its alleged statements "in the course of terminating" Plaintiff; and (2) the NMAA's alleged

statements did not "foreclose other employment opportunities."[2]

First, none of the NMAA's alleged statements about Plaintiff occurred "in the course of

terminating" Plaintiff.   Plaintiff was not an employee of the NMAA, and thus could not have been

terminated by the NMAA.   To the contrary, Plaintiff was employed as a teacher and a coach by

the Clovis Municipal Schools.   Consequently, only the Clovis Municipal Schools had the power

to terminate Plaintiff's employment.   Plaintiff thus is unable to establish that the NMAA damaged

his reputation "in the course of terminating" him.   *See Stidham v. Peace Officer Standards &*

*Training*, 265 F.3d 1144, 1153 (10th Cir. 2001).

It is equally clear that the NMAA's alleged statements about Plaintiff did not "foreclose

other employment opportunities."   Although Plaintiff was terminated from his coaching position

by the Clovis Municipal Schools, his position as a CHS science teacher was never terminated.

---

[2] "There is some uncertainty in [Tenth Circuit] case law as to whether the two aspects of the third element should be considered conjunctive rather than disjunctive."   *Trant v. Oklahoma*, 426 F. App'x 653, 664 n.5 (10th Cir. 2011).   As neither aspect of the third element is met here, the difference is not material to this Court's disposition.   *Id.*

Further, Plaintiff was subsequently rehired as Head Basketball Coach, his coaching contract was renewed for the 2010-2011 school year, and he was offered another coaching contract for the 2011-2012 school year.   Under virtually identical circumstances, the Tenth Circuit has held that "the loss of prospective job opportunities is too speculative to support a deprivation of a liberty interest claim under § 1983."   *McCarty*, 8 F. App'x at 875.

Moreover, the undisputed evidence demonstrates that Plaintiff was offered, and accepted, the only job opportunity he sought after the NMAA's alleged statements.   As Plaintiff admits, despite being offered a renewal of his coaching and teaching contract with CHS, he applied for and was offered a job as Head Men's Basketball Coach at McMurry University, where his son is a member of the team.   He accepted the job, and indicated that he did so because it was the job he preferred.   Plaintiff's salary and benefits at McMurry University are more lucrative than what he was receiving at CHS.   Accordingly, Plaintiff cannot establish that the NMAA's alleged statements foreclosed other employment opportunities.

Based on the undisputed facts, Plaintiff cannot meet his burden of showing that the NMAA's alleged statements occurred in the course of terminating Plaintiff or foreclosed other employment opportunities.   Accordingly, Plaintiff is unable to establish an actual deprivation of his liberty interest.   His due process claim, as set forth in Count V of the Third Amended Complaint, thus must be dismissed.

## CONCLUSION

Plaintiff is entitled to judgment in his favor on Count I of the Third Amended Complaint, to the extent this Count seeks a finding of liability on the part of the NMAA for compensatory damages arising from the NMAA's suspension of Plaintiff pursuant to NMAA Bylaw 6.1.3. Plaintiff has agreed to dismissal of Count II.   Because the NMAA is immune under the TCA from

17

suit on Plaintiff's claims for defamation and interference with contract, Counts III and IV must be dismissed.   Plaintiff is unable to establish an actual deprivation of his liberty interest in his good name and reputation, and accordingly, his due process claim, set forth in Count V, must be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 144] is **GRANTED in part** and **DENIED in part**, and Defendant's Motion for Summary Judgment and Memorandum in Support Thereof [Doc. 145] is **GRANTED in part** and **DENIED in part**, as follows:   judgment is granted in favor of Plaintiff on Count I of the Third Amended Complaint, to the extent that Count seeks a finding of liability on the part of the NMAA for compensatory damages, if any, arising from the NMAA's suspension of Plaintiff pursuant to NMAA Bylaw 6.1.3; Plaintiff's request for punitive damages, as set forth in Count I, is dismissed; that portion of Count I requesting a declaratory judgment, and that portion of Count I seeking damages as a result of the NMAA's alleged violation of his right to freedom of association are dismissed; and Counts II, III, IV, and V are dismissed.

DATED this 20th day of September, 2012.


_____
MARTHA VAZQUEZ
United States District Judge